**No. 23-4331**

IN THE

# United States Court of Appeals for the Ninth Circuit

C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; and PATRICIA PRITCHARD, *et al.*,
*Plaintiffs-Appellees*,

v.

BLUE CROSS BLUE SHIELD OF ILLINOIS,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Western District of Washington,
District Court Case No. 3:20-cv-06145-RJB, Hon. Robert J. Bryan

**BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

Susannah Porter Lake
ACLU OF WASHINGTON FOUNDATION
P.O. Box 2728
Seattle, WA 98111
T. (206) 624-2184
slake@aclu-wa.org

Joshua A. Block
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T. (212) 549-2593
F. (212) 549-2650
jblock@aclu.org

*Counsel for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

*Amici curiae* the American Civil Liberties Union and the American Civil Liberties Union of Washington Foundation are non-profit entities that do not have parent corporations. No publicly held corporation owns 10 percent or more of any stake or stock in *amici curiae*.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ...................................................................... iii

INTEREST OF *AMICI CURIAE* .................................................................1

STATEMENT OF COMPLIANCE WITH RULE 29 ..............................................1

SUMMARY OF ARGUMENT.........................................................................1

ARGUMENT ...............................................................................................4

I. Categorical Exclusions of Gender Affirming Care Facially Discriminate on the Basis of Sex Under *Bostock*.......................................................................4

A. Categorical Exclusions of Gender Affirming Care Inherently Rely on an Individual's Sex as a "But For" Cause of the Discrimination.......................5

B. Discriminatory Exclusions of Gender Affirming Care Penalize Transgender People for Failing to Conform to Their Sex Designated at Birth. .................8

II. Erroneous Equal Protection Cases from Other Circuits Are Inapposite for Claims Under Section 1557...................................................................10

A. *Bostock* Applies to Claims Under Section 1557. ........................................11

B. *Geduldig* Does Not Apply to Claims Under Section 1557. .........................12

CONCLUSION...........................................................................................15

CERTIFICATE OF COMPLIANCE ...............................................................17

CERTIFICATE OF SERVICE ........................................................................18

# TABLE OF AUTHORITIES

## Cases

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023) ....13
*Bostock v. Clayton County*, 590 U.S. 644 (2020) .......................................... passim
*Boyden v. Conlin*, 341 F. Supp. 3d 979 (W.D. Wis. 2018).......................................10
*Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022)..........................3, 11
*Conley v. Nw. Fla. State Coll.*, 145 F. Supp. 3d 1073 (N.D. Fla. 2015) ..................17
*Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022)................................................ 4, 12, 13
*Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023) ......... passim
*Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931 (W.D. Wis. 2018) ...........2
*Fletcher v. Alaska*, 443 F. Supp. 3d 1024 (D. Alaska 2020).......................................2
*Geduldig v. Aiello*, 417 U.S. 484 (1974)......................................................... passim
*General Electric Co. v. Gilbert*, 429 U.S. 125 (1976) .............................................15
*Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110 (9th Cir. 2023)..........................12
*Hammons v. Univ. of Md. Med. Sys. Corp.*, 649 F. Supp. 3d 104 (D. Md. 2023 ......2
*Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024)............................................. passim
*Kadel v. Folwell*, 446 F. Supp. 3d 1 (M.D.N.C. 2020) ...............................................7
*L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023)........................ passim
*Lange v. Houston Cnty.*, 101 F.4th 793 (11th Cir. 2024) ................................ 10, 13
*Lange v. Houston Cnty.*, 608 F. Supp. 3d 1340 (M.D. Ga. 2022)............................16
*Muro v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 19-10812, 2019 WL 5810308 (E.D. La. Nov. 7, 2019) ..........................................16
*Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669 (1983) 15, 16
*Stanford v. Fox Coll.*, No. 18 C 3703, 2020 WL 814865 (N.D. Ill. Feb. 19, 2020) 17
*Toomey v. Arizona*, No. CV-19-00035-TUC (RM), 2019 WL 7172144 (D. Ariz. Dec. 23, 2019).......................................................................................2, 8
*Tovar v. Essentia Health*, 342 F. Supp. 3d 947 (D. Minn. 2018)..............................2
*Workman v. Univ. of Akron*, No. 5:16-cv-156, 2017 WL 6326898 (N.D. Ohio Dec. 11, 2017) ..........................................................................................................17
*Young v. United Parcel Serv., Inc.*, 575 U.S. 206 (2015)........................................16

## Statutes

42 U.S.C. § 18116 ..........................................................................................1, 4
42 U.S.C. § 2000e, *et seq.*...................................................................................2
42 U.S.C.A. § 2000e(k)......................................................................................15

Pregnancy Discrimination Act of 1978, Pub. L. No. 95-555, 92 Stat. 2076 ..........15

**Regulations**

34 C.F.R. § 106.40(b)..........................................................................................17

Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160 (June 19, 2020)............................18

Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375 (May 18, 2016) ........................................................................................................18

Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522 (May 6, 2024) ...............................................................................................................18

## INTEREST OF *AMICI CURIAE*

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization dedicated to defending the principles of liberty and equality embodied in the Constitution. The American Civil Liberties Union of Washington Foundation ("ACLU of Washington") is one of the ACLU's statewide affiliates with over 150,000 members and supporters. As organizations dedicated to protecting the equal rights of lesbian, gay, bisexual, and transgender people, *amici* have a strong interest in the proper interpretation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, to ensure that transgender insurance beneficiaries have nondiscriminatory access to gender affirming medical care.

## STATEMENT OF COMPLIANCE WITH RULE 29

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. No one other than *amici curiae*, their members, or their counsel financed the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

The Supreme Court held in *Bostock v. Clayton County*, 590 U.S. 644 (2020), that discrimination based transgender status necessarily entails discrimination based on "sex" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. The Fourth Circuit, the Eleventh Circuit, and virtually every other court to consider the question have all recognized that excluding insurance coverage for medically

necessary care because the care is performed for purposes of "gender reassignment" or to treat gender dysphoria facially discriminates on the basis of "sex" under *Bostock*.[1] As these courts have explained, excluding coverage on that basis (a) inherently imposes differential treatment based on an individual's sex designated at birth; and (b) penalizes transgender people for failing to physically conform to their birth-designated sex.

In arguing that its categorical exclusion is facially neutral, Defendant asks this Court to follow one side of a circuit split regarding the proper interpretation of the Equal Protection Clause. Appellant's Br. 66–71. The Fourth and Eighth Circuits have both held that restrictions on gender affirming care are facially discriminatory under the Equal Protection Clause. *See Kadel v. Folwell*, 100 F.4th 122, 153–54 (4th Cir. 2024) (en banc); *Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661, 669 (8th Cir. 2022).

---

[1] *See Kadel v. Folwell*, 100 F.4th 122, 153 (4th Cir. 2024) (en banc); *Lange v. Houston Cnty.*, 101 F.4th 793, 799 (11th Cir.), *petition for reh'g en banc filed* June 3, 2024; *Hammons v. Univ. of Md. Med. Sys. Corp.*, 649 F. Supp. 3d 104, 113 (D. Md. 2023) (granting summary judgment for Section 1557 claim), *appeal filed*, No. 23-1394 (4th Cir. Apr. 12, 2023); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1030–31 (D. Alaska 2020) (granting summary judgment for Title VII claim pre-*Bostock*); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 952–53 (D. Minn. 2018) (denying motion to dismiss for Section 1557 claim pre-*Bostock*); *Toomey v. Arizona*, No. CV-19-00035-TUC (RM), 2019 WL 7172144, at *5 (D. Ariz. Dec. 23, 2019) (denying motion to dismiss Title VII claim pre-*Bostock*); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 995–97 (W.D. Wis. 2018) (granting summary judgment for Title VII and Section 1557 claims pre-*Bostock*); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 947–50 (W.D. Wis. 2018) (issuing preliminary injunction for Title VII and Section 1557 claims pre-*Bostock*).

By contrast, the Sixth and Eleventh Circuits have (wrongly) held that bans on gender affirming care for minors are facially sex neutral under the Equal Protection Clause. *See L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 480–86 (6th Cir.), *petition for cert. docketed*, No. 23-466 (Nov. 1, 2023), *and petition for cert. docketed sub nom.*, *United States v. Skrmetti*, No. 23-477 (Nov. 6, 2023); *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205, 1226–30 (11th Cir.), *petition for reh'g en banc filed* Sept. 11, 2023. This Court will soon address the constitutionality of a similar ban from Idaho in *Poe v. Labrador*, No. 24-142.

But regardless of how this Court rules in *Poe*, the circuit split over the Equal Protection Clause has no bearing on the Section 1557 claims at issue here, for at least two reasons. First, in concluding that bans on gender affirming care were facially sex neutral under the Equal Protection Clause, the Sixth and Eleventh Circuits held (wrongly) that *Bostock* does not apply to equal protection claims. But whatever one thinks of that conclusion, the claims in *this* case are based on Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, and this Court has already held that *Bostock*'s reasoning *does* apply to claims for sex discrimination under Section 1557. *See Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022).

Second, in reaching their conclusions, the Sixth and Eleventh Circuits erroneously applied the Supreme Court's equal protection decision in *Geduldig v. Aiello*, 417 U.S. 484 (1974). But regardless of how *Geduldig* applies to gender

affirming care in the equal protection context, *Geduldig* does not apply *at all* to claims under Title VII or Section 1557. Thus, even if the Sixth and Eleventh Circuits' equal protection holdings were correct—and they are not—those decisions have no bearing on whether Defendant's insurance exclusion is facially discriminatory under Section 1557.

For these reasons, Defendant's exclusion of coverage "for treatment, drugs, therapy, counseling services and supplies for, or leading to, gender reassignment surgery," 1-ER-59, facially discriminates on the basis of sex under Section 1557, and the district court's entry of summary judgment should be affirmed.

## ARGUMENT

### I. Categorical Exclusions of Gender Affirming Care Facially Discriminate on the Basis of Sex Under *Bostock*.

Under *Bostock*, Defendant's exclusion of care "for treatment, drugs, therapy, counseling services and supplies for, or leading to, gender reassignment surgery," 1-ER-59, is "textbook sex discrimination." *Kadel*, 100 F.4th at 153. Excluding care based solely on the fact that the care is for purposes of "gender reassignment" or treating gender dysphoria necessarily relies on an individual's sex as a "but for" cause of discrimination, and it penalizes transgender people for failing to conform to their sex designated at birth.

### A. Categorical Exclusions of Gender Affirming Care Inherently Rely on an Individual's Sex as a "But For" Cause of the Discrimination.

As the Supreme Court explained in *Bostock*, discrimination based on a person's transgender status "necessarily entails discrimination based on sex; the first cannot happen without the second." 590 U.S. at 669. Because a transgender person is someone whose gender identity is different from their sex designated at birth, a classification based on sex designated at birth is embedded within the definition of what it means to be transgender. Thus, "[w]hen an employer fires an employee because she is . . . transgender, two causal factors may be in play—*both* the individual's sex [designated at birth] *and* something else (the sex . . with which the individual identifies)." *Id.* at 661. But "[s]o long as the plaintiff's sex [designated at birth] [is] one but-for cause of that decision, that is enough to trigger the law." *Id.* at 656. "By discriminating against transgender persons, the employer unavoidably discriminates against persons with one sex identified at birth and another today." *Id.* at 669.

Under *Bostock*, Defendant's exclusion of coverage "for treatment, drugs, therapy, counseling services and supplies for, or leading to, gender reassignment surgery" facially discriminates based on sex. 1-ER-59. The provision does not exclude coverage based on generally applicable criteria such as lack of medical necessity. Indeed, Defendant's policy generally covers care for hormone treatments, mastectomies, and chest reconstruction if that care is considered medically necessary

for a diagnosis other than gender dysphoria. 1-ER-59–60. But, under the terms of the exclusion, Defendant must *automatically* exclude coverage for gender dysphoria without any determination of whether the care is—or is not—medically necessary, experimental, or otherwise ineligible for coverage for some generally applicable reason. The sole basis for the exclusion is that the care is used to treat a diagnosis of gender dysphoria. 1-ER-60.

An exclusion based on "gender dysphoria" is—by definition—an exclusion based in part on a person's sex. Gender dysphoria is defined as an "incongruence" between a person's gender identity and their sex designated at birth that results in a "feeling of clinically significant stress and discomfort." Appellant's Br. 9. "The characteristics of sex [designated at birth] and gender [identity] are directly implicated; it is impossible to refer to the Exclusion without referring to them." *Kadel v. Folwell*, 446 F. Supp. 3d 1, 18 (M.D.N.C. 2020).

Thus, as with the definition of being transgender, the definition of gender dysphoria incorporates a classification based on an individual's sex designated at birth, making it impossible to discriminate based on the former without also discriminating based on the latter. If a transgender insurance beneficiary had been designated a different sex at birth, "he would not suffer from gender dysphoria and would not be seeking" treatment for that condition. *Toomey v. Arizona*, No. CV-19-00035-TUC (RM), 2019 WL 7172144, at *5 (D. Ariz. Dec. 23, 2019). Or, adapting

the formulation used in *Bostock*, when an insurance policy discriminates against an employee because they have gender dysphoria, three "causal factors may be in play—*both* the individual's sex [designated at birth] *and* something else (the sex . . with which the individual identifies [and the existence of clinically significant distress])." *Bostock*, 590 U.S. at 661. But so long as the plaintiff's sex designated at birth is "one but-for cause of that decision, that is enough to trigger the law." *Id.* at 656.

In arguing that its exclusion is facially neutral, Defendant asserts that "the exclusion for gender dysphoria diagnosis does not apply 'sex-based rules' like those essential to [the] rationale of *Bostock*." Appellant's Br. 68. But that is *precisely* what the exclusion does. To illustrate how discrimination based on transgender status necessarily applies "sex-based rules," the Supreme Court in *Bostock* provided the following hypothetical about an employer who asks applicants to "check a box" indicating if they are gay or transgender: "[I]magine an applicant doesn't know what the words homosexual or transgender mean. Then try writing out instructions for who should check the box without using the words man, woman, or sex (or some synonym). It can't be done." *Bostock*, 590 U.S. at 668–69. An exclusion of coverage for gender dysphoria similarly requires an insurance provider to rely on sex-based rules in precisely the same way. If an insurance beneficiary files a claim for a vaginoplasty, a "third-party administrator cannot make the coverage decision

without knowing whether the vaginoplasty is to treat gender dysphoria—in other words, whether the patient was assigned male at birth." *Kadel*, 100 F.4th at 154.

Because a person's sex designated at birth is a necessary element of a diagnosis for gender dysphoria, Defendant's exclusion of care to treat a diagnosis of gender dysphoria is—by definition—an exclusion based in part on a person's sex. "That has always been prohibited by" the plain terms of Title VII and Section 1557—"and that should be the end of the analysis." *Bostock*, 590 U.S. at 662 (internal quotation marks omitted).

### B. Discriminatory Exclusions of Gender Affirming Care Penalize Transgender People for Failing to Conform to Their Sex Designated at Birth.

Defendant's categorical exclusion also discriminates against transgender people based on their gender nonconformity, which, under *Bostock*, is a form of discrimination based on sex designated at birth. As *Bostock* explained, "an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female" but "retains an otherwise identical employee who was identified as female at birth" has "penalize[d] a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth." *Id.* at 660.

A categorical exclusion of coverage for gender affirming care similarly punishes transgender people for traits that would have been tolerated if they had a

different sex designated at birth. "For instance, while mastectomies are available for both people assigned male at birth and those assigned female at birth, when they are conducted for gender-affirming purposes, they are only available to those assigned male at birth." *Kadel*, 100 F.4th at 154. "This difference in coverage is rooted in a gender stereotype: the assumption that people who have been assigned female at birth are supposed to have breasts, and that people assigned male at birth are not." *Id.* The exclusion thus "implicates sex stereotyping by . . . requiring transgender individuals to maintain the physical characteristics of their natal sex," and penalizing them for failing to do so. *Boyden v. Conlin*, 341 F. Supp. 3d 979, 997 (W.D. Wis. 2018). *Accord Lange v. Houston Cnty.*, 101 F.4th 793, 799 (11th Cir.), *petition for reh'g en banc filed* June 3, 2024 ("In denying coverage for the vaginoplasty, Houston County deprived Lange of a benefit or privilege of her employment by reason of her nonconforming traits, thereby unlawfully punishing her for her gender nonconformity.").

Like any policy that penalizes transgender individuals for failing to conform to what is typical for their sex designated at birth, Defendant's exclusion of coverage "for treatment, drugs, therapy, counseling services and supplies for, or leading to, gender reassignment surgery," 1-ER-59. discriminates on the basis of sex under *Bostock*.

## II. Erroneous Equal Protection Cases from Other Circuits Are Inapposite for Claims Under Section 1557.

Defendants ask the Court to join one side of a circuit split regarding application of the Equal Protection Clause to restrictions on gender affirming care. Appellant's Br. 66–71. On one side of the split, the Sixth and Eleventh Circuits have (wrongly) held that Tennessee, Kentucky, and Alabama's bans on gender affirming care for minors did not facially discriminate on the basis of sex under the Equal Protection Clause. *See L.W.*, 83 F.4th at 480–86; *Eknes-Tucker*, 80 F.4th at 1226–30. On the other side, the Fourth and Eighth Circuits have both held that restrictions on gender affirming care are facially discriminatory under the Equal Protection Clause. *See Kadel*, 100 F.4th at 153–54; *Brandt*, 47 F.4th at 669. This Court will soon be addressing the constitutionality of a similar ban from Idaho in *Poe v. Labrador*, No. 24-142.

But the circuit split regarding the Equal Protection Clause is irrelevant to the Section 1557 claims in this case. In concluding that bans on gender affirming care for minors were facially sex neutral under the Equal Protection Clause, *L.W.* and *Eknes-Tucker* erroneously held that *Bostock* does not apply to equal protection claims and that laws prohibiting gender affirming care are facially neutral under *Geduldig*. This Court, however, has already held that *Bostock* applies to Section 1557, and it is well-settled that *Geduldig* does not apply outside of the equal

protection context. Thus, regardless of how this Court ultimately rules in *Poe*, the exclusion at issue in this case is facially discriminatory under Section 1557.

### A. *Bostock* Applies to Claims Under Section 1557.

This Court has already held that *Bostock*'s reasoning applies to sex discrimination claims under Title IX and Section 1557 (which prohibits discrimination on grounds prohibited by Title IX). *See Doe*, 28 F.4th at 114; *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023). In *Doe*, this Court explained that "[g]iven the similarity in language prohibiting sex discrimination in Titles VII and IX, we do not think *Bostock* can be limited" just to Title VII claims. *Doe*, 28 F.4th at 114. The Fourth and Seventh Circuits have both reached the same conclusion. *See Kadel*, 100 F.4th at 164; *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023), *cert. denied,* 144 S. Ct. 683 (2024).

Because *Bostock* applies to Section 1557 claims in this Circuit, the equal protection decisions in *L.W.* and *Eknes-Tucker* are irrelevant here. By their own terms, *L.W.* and *Eknes-Tucker* do not address whether exclusions of gender affirming care are sex neutral under *Bostock*. To the contrary, *L.W.* and *Eknes-Tucker* reached their conclusions by holding (wrongly) that *Bostock*'s "but for" causation standard does not apply to the Equal Protection Clause at all. *L.W.*, 83 F.4th at 484–85; *Eknes-Tucker*, 80 F.4th at 1228–29. If anything, the fact that *L.W.* and *Eknes-Tucker* found

it necessary to distinguish *Bostock* strongly suggests that, if *Bostock* had applied, such exclusions would *not* be facially sex neutral. Indeed, when the Eleventh Circuit subsequently evaluated a Title VII claim in *Lange* under *Bostock*, the court held that a similar exclusion was facially discriminatory. *See Lange*, 101 F.4th at 799.

### B. *Geduldig* Does Not Apply to Claims Under Section 1557.

The circuit split with respect to equal protection claims is also inapposite because those decisions were based on a disagreement over how to apply the Supreme Court's decision in *Geduldig*. The Supreme Court held in *Geduldig* that laws discriminating based on pregnancy do not facially discriminate based on sex under the Equal Protection Clause. In *L.W.* and *Eknes-Tucker*, the Sixth and Eleventh Circuits drew an analogy to *Geduldig* and concluded that laws banning gender affirming care for minors do not facially discriminate based on sex under the Equal Protection Clause either. *See L.W.*, 83 F.4th at 481; *Eknes-Tucker*, 80 F.4th at 1229. By contrast, the Fourth Circuit has rejected the *Geduldig* analogy. *See Kadel*, 100 F.4th at 146–47.[2]

---

[2] As the Fourth Circuit explained, unlike classifications based on pregnancy, exclusions of gender affirming care "cannot function without relying on direct—not just proxy-based—discrimination." *Kadel*, 100 F.4th at 146.

> Determining whether someone requires pregnancy-related treatment—the issue in *Geduldig*—does not turn on or require inquiry into a protected characteristic. True, when a doctor determines a person is pregnant, they will generally, as a consequence, also have reached a conclusion about the person's sex assigned at birth. But that is true only

Regardless of whether *Geduldig*'s reasoning applies to equal protection cases involving denial of gender affirming care, it is well-settled that *Geduldig*'s reasoning applies *only* in the context of the Equal Protection Clause and has no bearing on claims under Title VII, Title IX, or Section 1557. The Supreme Court initially attempted to extend *Geduldig*'s reasoning to Title VII in *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976), but Congress quickly overruled that decision when it passed the Pregnancy Discrimination Act of 1978, Pub. L. No. 95-555, 92 Stat. 2076 (codified at 42 U.S.C.A. § 2000e(k)). In doing so, Congress "unambiguously expressed its disapproval of both the holding and the reasoning of the Court in the *Gilbert* decision." *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678 (1983); *accord Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 227–28 (2015) ("[T]he first clause of the [Act] reflects Congress' disapproval of the reasoning in *Gilbert*"). "The House Report stated, 'It is the Committee's view that the dissenting Justices correctly interpreted the Act.' Similarly, the Senate Report

---

> because, as *Geduldig* recognized, pregnancy is often a reliable indicator of a person's sex. In contrast, determining whether a treatment like reduction mammoplasty constitutes "transsexual surgery" or whether a testosterone supplement is prescribed in connection with a "sex change[] or modification[]" is impossible—literally cannot be done—without inquiring into a patient's sex assigned at birth and comparing it to their gender identity. Indeed, those procedures are routinely covered by the Plan and Program in situations where the only material difference is the patient's sex.

*Id.* at 146–47.

quoted passages from the two dissenting opinions, stating that they 'correctly express both the principle and the meaning of [T]itle VII.'" *Newport News*, 462 U.S. at 678. As a result, "*Geduldig*-based reasoning" simply has "no place in Title VII analysis." *Lange v. Houston Cnty.*, 608 F. Supp. 3d 1340, 1359 n.14 (M.D. Ga. 2022), *aff'd*, 101 F.4th 793 (11th Cir. 2024).

*Geduldig* similarly has no place in Title IX and Section 1557 because "discrimination on the basis of pregnancy, childbirth, or related medical conditions is a form of sex discrimination prohibited by Title IX." *Muro v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 19-10812, 2019 WL 5810308, at *3 (E.D. La. Nov. 7, 2019); *accord Stanford v. Fox Coll.*, No. 18 C 3703, 2020 WL 814865, at *6 (N.D. Ill. Feb. 19, 2020) ("Discrimination 'on the basis of sex' [under Title IX] includes pregnancy discrimination."); *Workman v. Univ. of Akron*, No. 5:16-cv-156, 2017 WL 6326898, at *3 (N.D. Ohio Dec. 11, 2017) ("The discrimination prohibited by Title IX includes discrimination related to pregnancy."). "Although it is true that Congress has never amended Title IX's definition of sex to explicitly include pregnancy," that is simply a reflection of the fact that "[i]n the case of Title IX there has been no faulty precedent to overturn." *Conley v. Nw. Fla. State Coll.*, 145 F. Supp. 3d 1073, 1083–85 (N.D. Fla. 2015). Indeed, Title IX's regulations have long prohibited discrimination based on pregnancy as part of discrimination based

on sex. *See* 34 C.F.R. § 106.40(b). The regulations for Section 1557 have also consistently included a prohibition on pregnancy discrimination.[3]

Because claims under Section 1557 are governed by *Bostock*, not *Geduldig*, the current circuit split over whether laws targeting gender affirming care are facially discriminatory under the Equal Protection Clause has no bearing on whether policies targeting gender affirming care are facially discriminatory under Section 1557. Regardless of how this Court ultimately rules in a constitutional challenge, Defendant's categorical exclusion of gender affirming care in *this* case is facially discriminatory for purposes of *Bostock* and Section 1557.

## CONCLUSION

The district court's entry of summary judgment should be affirmed.

---

[3] The 2024 regulations recently promulgated by the Biden administration include a provision stating that "[d]iscrimination on the basis of sex includes, but is not limited to, discrimination on the basis of," *inter alia*, "[p]regnancy or related conditions." Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522, 37,699 (May 6, 2024). The 2020 regulations issued by the Trump administration declined to define "on the basis of sex" but reaffirmed that the term included pregnancy. "Many comments on the 2019 NPRM assume that Section 1557's protection against discrimination 'on the basis of sex' covers women's health issues including pregnancy, uterine cancer, and prenatal and postpartum services. That assumption is correct: These issues are protected under Section 1557 because of the ordinary and biological meaning of 'sex.'" Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160, 37,179–80 (June 19, 2020). The 2016 regulations issued by the Obama Administration stated that "[o]n the basis of sex includes, but is not limited to, discrimination on the basis of pregnancy." Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375, 31,467 (May 18, 2016).

Respectfully submitted,

/s/ *Joshua A. Block.*
Joshua A. Block
AMERICAN CIVIL LIBERTIES
 UNION FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
T. (212) 549-2593
F. (212) 549-2650
jblock@aclu.org

Susannah Porter Lake
ACLU OF WASHINGTON FOUNDATION
P.O. Box 2728
Seattle, WA 98111
T. (206) 624-2184
slake@aclu-wa.org

*Counsel for amici curiae*

June 18, 2024

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), the undersigned counsel certifies that the foregoing document complies with the type-volume limitation set forth in Fed. R. App. P. 29(b)(4), and typeface requirements and type-style requirements set forth in Fed. R. App. P. 32(a)(5)–(6), because it contains 3,771 words and has been prepared in a proportionally spaced typeface, Times New Roman, size fourteen points, using the word-processing system Microsoft Word 2019.

June 18, 2024

*/s/ Joshua A. Block*
Joshua A. Block
AMERICAN CIVIL LIBERTIES UNION

*Attorney for amici curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2024, the foregoing was filed electronically with the Clerk of Court through the appellate CM/ECF system. I further certify that all parties required to be served have been served.

June 18, 2024

*/s/ Joshua A. Block*
Joshua A. Block
AMERICAN CIVIL LIBERTIES UNION

*Attorney for amici curiae*