No. 23-4331

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

C.P., by and through his parents,
PATRICIA PRITCHARD AND NOLLE PRITCHARD, *et al.*,

*Plaintiffs–Appellees,*

v.

BLUE CROSS–BLUE SHIELD OF ILLINOIS,

*Defendant–Appellant.*

On Appeal from a Final Judgment of the
United States District Court for the Western District of Washington,
Case No. 3:20-cv-06145, Hon. Robert J. Bryan

## BRIEF OF RELIGION-LAW SCHOLARS AS *AMICI CURIAE* SUPPORTING APPELLEES AND AFFIRMANCE

RICHARD B. KATSKEE
JOSHUA BRITT†
MARGARET K. KRUZNER†
JAKE SHERMAN†
*Duke University*
*School of Law*
*210 Science Dr., Box 90360*
*Durham, NC 27708-0360*
*(919) 613-7230*

*Counsel for* Amici Curiae

† May 2024 graduate of Duke Law School, appearing under Cir. R. 46-4.

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................ ii

Interests of the *Amici Curiae* ........................................ 1

Introduction ................................................................. 2

Argument .................................................................... 3

    A.   RFRA Establishes A Two-Step Framework To Determine Whether A Religious Claimant Is Entitled To A Religious Accommodation From A Generally Applicable Law ........................ 5

    B.   RFRA Requires That The Religious Adherent Invoking The Act's Protections Be A Party To The Action. ........................... 6

    C.   RFRA's Compelling-Interest Test Requires That Both The Government And The Religious Claimant Be Parties. ................. 15

    D.   RFRA's Religious-Accommodation Framework Does Not Rewrite All Federal Law Wholesale. .............................. 23

Conclusion ................................................................. 28

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Am. Legion v. Am. Humanist Ass'n,*
139 S. Ct. 2067 (2019) ...........................................................9, 13

*Billard v. Charlotte Cath. High Sch.,*
101 F.4th 316 (4th Cir. 2024)...............................................16

*Boggan v. Miss. Conf. of United Methodist Church,*
222 F. App'x 352 (5th Cir. 2007)......................................15, 16

*Bostock v. Clayton Cnty.,*
590 U.S. 644 (2020) ...........................................................23, 25

*Braunfeld v. Brown,*
366 U.S. 599 (1961) .................................................................9

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) ........................... 9, 10, 11, 19, 20, 22

*Cutter v. Wilkinson,*
544 U.S. 709 (2005) ...............................................................22

*EEOC v. Cath. Univ. of Am.,*
83 F.3d 455 (D.C. Cir. 1996) ...............................................17

*Emp. Div. v. Smith,*
494 U.S. 872 (1990) ..................................................8, 9, 20, 24

*FDA v. All. for Hippocratic Med.,*
602 U.S. __, 2024 WL 2964140 (June 13, 2024) .....................13

*Frazee v. Ill. Dep't of Emp. Sec.,*
489 U.S. 829 (1989) .................................................................9

*Gen. Conf. Corp. of Seventh-Day Adventists v. McGill,*
617 F.3d 402 (6th Cir. 2010) .......................................15, 18, 20

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
546 U.S. 418 (2006) ............................................................9, 22

*In re Grand Jury Empaneling,*
171 F.3d 826 (3d Cir. 1999)..............................................15, 16

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Hammons v. Univ. of Md. Med. Sys. Corp.*,
  649 F. Supp. 3d 104 (D. Md. 2023) .......................................17

*Hankins v. Lyght*,
  441 F.3d 96 (2d Cir. 2006) .................................................16, 21

*Hernandez v. Comm'r*,
  490 U.S. 680 (1989) ...............................................................9

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
  565 U.S. 171 (2012) .............................................................26

*In re Linton*,
  136 F.3d 544 (7th Cir. 1998) ...............................................17

*Listecki v. Off. Comm. of Unsecured Creditors*,
  780 F.3d 731 (7th Cir. 2015) .....................................15, 19, 21

*Little Sisters of the Poor Saints Peter
  & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020) .............................................................11

*Murdock v. Pennsylvania*,
  319 U.S. 105 (1943) ...............................................................8

*Permoli v. Mun. No. 1*,
  44 U.S. 589 (1845) .................................................................8

*Rweyemamu v. Cote*,
  520 F.3d 198 (2d Cir. 2008) ..............................................16, 21

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. L.L.C.*,
  531 B.R. 439 (Bankr. S.D.N.Y. 2015) ...................................16

*Sherbert v. Verner*,
  374 U.S. 398 (1963) ............................................................8, 22

*Spencer v. World Vision, Inc.*,
  619 F.3d 1109 (9th Cir. 2010) .........................................10, 12

*Sutton v. Providence St. Joseph Med. Ctr.*,
  192 F.3d 826 (9th Cir. 1999) ................................ 4, 15, 18, 20, 27

# TABLE OF AUTHORITIES—continued

**Page(s)**

*United States v. Lee,*
455 U.S. 252 (1982) ..................................................8, 9, 22, 25

*United States v. Seeger,*
380 U.S. 163 (1965) ................................................................9

*Whole Woman's Health v. Smith,*
896 F.3d 362 (5th Cir. 2018) ......................................16, 17, 18

*Wisconsin v. Yoder,*
406 U.S. 205 (1972) ................................................................8

*Wisc. Province of Soc'y of Jesus v. Cassem,*
373 F. Supp. 3d 378 (D. Conn. 2019)........................................16

*Worldwide Church of God v. Phila. Church of God,*
227 F.3d 1110 (9th Cir. 2000) ................................................18

*In re Young,*
141 F.3d 854 (8th Cir. 1998) ................................................17

*Zubik v. Burwell,*
578 U.S. 403 (2016) ..............................................................11

**Constitution, Statutes, and Regulations**

U.S. CONST. amend. I ................................................................1

16 U.S.C. § 668–668d ..............................................................26

29 U.S.C. §§ 701–797b ............................................................26

31 U.S.C. § 3730(b)................................................................21

Religious Freedom Restoration Act
42 U.S.C. § 2000bb ........................................................1, 8, 20
42 U.S.C. § 2000bb-1 ..................... 1, 3, 6, 7, 13, 18, 19, 20, 22
42 U.S.C. § 2000bb-2 ..................................................1, 20, 21

## TABLE OF AUTHORITIES—continued

**Page(s)**

Affordable Care Act § 1557,
   42 U.S.C § 18116 ............................................... 1, 2, 3, 6, 10, 12, 13, 14, 15

50 C.F.R. § 22................................................................................26

**Other Authorities**

William N. Eskridge Jr. & John Ferejohn, *Super-Statutes*,
   50 DUKE L.J. 1215 (2001)................................................................24

Eugene Gressman & Angela C. Carmella, *The RFRA
   Revision of the Free Exercise Clause*,
   57 OHIO ST. L.J. 65 (1996)..............................................................24

H.R. 5377, 101st Cong. § 2(c) (1990) .............................................20

WILLIAM J. NORTON III, NORTON BANKR. L. & P. 3d § 28:1
   (2024)............................................................................................17

Michael Stokes Paulsen, *A RFRA Runs Through It:
   Religious Freedom and the U.S. Code*,
   56 MONT. L. REV. 249 (1995).........................................................24

## INTERESTS OF THE *AMICI CURIAE*[1]

*Amici* are scholars who study, teach, and write on the Religion Clauses of the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.* We provide this brief to aid the Court in analyzing the structure of these important constitutional and statutory protections, and their interplay with religiously neutral legal requirements like Section 1557 of the Affordable Care Act, 42 U.S.C § 18116, to ensure that religious freedom and other fundamental rights are respected. The arguments that the appellant and its *amici* make about RFRA are contrary to the Act's text and statutory objectives. And they are inconsistent with the principles of religious accommodation that stand at the heart of the constitutional and statutory protections for religious free exercise.

The *amici* are:

- Prof. Emeritus Frederick Gedicks,
  J. Reuben Clark Law School, Brigham Young University

- Prof. Jessie Hill,
  Case Western Reserve University School of Law

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amici* or their counsel made a monetary contribution intended to fund the brief's preparation or submission. The parties have consented to the filing of this brief. Institutional affiliations are listed for identification purposes only. The scholars' views expressed here should not be attributed to their institutions.

- Prof. Richard B. Katskee,
  Duke University School of Law

- Prof. James D. Nelson,
  University of Houston Law Center

- Prof. Elizabeth W. Sepper,
  University of Texas School of Law

- Prof. Nelson Tebbe,
  Cornell Law School

## INTRODUCTION

Blue Cross–Blue Shield of Illinois demands broad religious exemptions under the Religious Freedom Restoration Act from the nondiscrimination requirements of Section 1557 of the Affordable Care Act, even though neither the government nor any religious adherents are parties to this action. That means no party can adequately define its religious exercise or show a substantial burden on that exercise; no party can articulate, demonstrate, and justify the countervailing governmental interests that Section 1557 serves; and the courts cannot identify and consider potentially less restrictive alternatives to achieve Section 1557's nondiscrimination objectives.

If Blue Cross had its way, the courts would have to guess at religious objections and compelling interests of nonparties and to assume that the hypothetical religious objections necessarily outweigh any possible governmental interests. Blue Cross seeks to exempt itself—and by

implication all secular third-party administrators of insurance plans—from complying with the Affordable Care Act's nondiscrimination requirements just because of the bare possibility that some self-insured religious employer somewhere might object to paying for certain medical procedures and potentially have a viable RFRA claim. Blue Cross's scheme would thus undermine a lawfully enacted healthcare statute that protects tens of millions of Americans, without advancing religious freedom. The district court properly rejected Blue Cross's dangerous invitation. This Court should do the same.

## ARGUMENT

Blue Cross–Blue Shield of Illinois is a health-insurance company that serves nearly nine million Americans and is part of a national federation of companies that together serve some 115 million—more than a third of the entire population of the United States. It straightforwardly concedes that it does not itself have any religious beliefs—let alone any religious exercise that might be substantially burdened, whether by Section 1557 of the Affordable Care Act or otherwise. *See* ER-45. By RFRA's plain terms, therefore, Blue Cross is not a "person whose religious exercise has been burdened" (42 U.S.C. § 2000bb-1(c)). Hence, it cannot avail itself of RFRA's protections. That alone should end the RFRA analysis.

3

Those whom RFRA does protect—religious adherents, whether individuals or entities, whose sincerely held religious commitments are threatened by governmental action—are wholly unrepresented here. Yet religious free-exercise rights are particular to the religious claimant. When a constitutional or statutory free-exercise claim or defense is successful, it does not invalidate the challenged legal requirement but instead entitles the claimant to a religious accommodation that ameliorates the burdens on that claimant's religious exercise. That is why, to invoke RFRA's protections and be eligible for an accommodation tailored to one's religious needs, a claimant must demonstrate actual, sincere religious exercise that is substantially burdened. Here, however, Blue Cross merely speculates about the religious interests of nonparties; and it demands an exemption from its own legal obligations. That is not how RFRA or free-exercise claims operate.

Even if Blue Cross could somehow invoke RFRA in the absence of a religious claimant (and hence of any cognizable RFRA claim or defense), the Act's text and binding Circuit precedent also require that the government be a party to the lawsuit for RFRA to apply. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 834, 837–844 (9th Cir. 1999). That is both because RFRA establishes rights against the government, not against private actors, and because courts cannot undertake the second step in the RFRA inquiry—application of a compelling-interest test—without having

4

the government articulate, explain, and justify its own interests in regulating and address whether any accommodation of the adherent's particular religious needs would still allow the government to achieve its critical aims.

Blue Cross asks this Court to redraft RFRA, and in so doing upend the very idea of religious accommodation, in order to exempt from the reach of federal law secular third-party administrators of insurance plans that have no religious interests. Blue Cross's profound misunderstanding of RFRA and the principles of religious accommodation threatens the rights and health of millions.

### A. RFRA Establishes A Two-Step Framework To Determine Whether A Religious Claimant Is Entitled To A Religious Accommodation From A Generally Applicable Law.

Religious adherents have fundamental interests in practicing their faith according to the dictates of conscience. And the government has the authority and duty to promote public safety and security for the benefit of all Americans. With these dual concerns in mind, Congress established a two-step procedure for deciding whether and to what extent religious claims are to be accommodated. First, a religious adherent who objects to some legal requirement (whether that objection comes in the form of a legal claim or an affirmative defense) bears the burden to demonstrate that the challenged governmental action substantially burdens the claimant's

sincere religious exercise. 42 U.S.C. § 2000bb-1(a). A RFRA claimant who does not meet this statutory prerequisite is not entitled to a religious exemption from the law. If, however, the religious adherent makes the required threshold showings, then, at the second step, the burden shifts to the government to demonstrate that its religiously burdensome action furthers a compelling governmental interest and is the least restrictive means of achieving that objective. 42 U.S.C. § 2000bb-1(b). If the government fails in either respect, the RFRA claimant is entitled to a religious accommodation that ameliorates the burden on that claimant's religious exercise.

That two-step burden-shifting analysis requires two parties—a sincere religious believer and the federal government. This case includes neither.

### B. RFRA Requires That The Religious Adherent Invoking The Act's Protections Be A Party To The Action.

Blue Cross, a large health-insurance company with no religious beliefs or commitments (*see* ER-45), seeks to exempt itself from the requirements of Section 1557. But RFRA grants religious-accommodation rights only to religious claimants, not to nonreligious entities. To read RFRA any other way cannot be squared with the statute's plain text. And it would be

incompatible with the very idea of individualized accommodations to protect adherents' free exercise of religion.

1. RFRA's plain language mandates that parties who do not themselves hold religious beliefs cannot invoke the Act's protections. The Act provides for "Judicial Relief" this way: "A person whose religious exercise has been burdened . . . may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). RFRA claims and defenses are thus available only to an individual or entity whose own religious exercise is burdened—not to secular parties, like Blue Cross, that disclaim any religious exercise and so cannot experience such a burden.

This conclusion is also compelled by the nature of RFRA's two-step inquiry: Only the religious claimants themselves can describe with specificity their religious beliefs and practices, demonstrate that their religious-accommodation claims are sincere, offer evidence and argument about whether, how, and to what extent their religious exercise is burdened by the challenged governmental action, and address what accommodation might, as a matter of the claimants' faith, alleviate the burden. Without a "person" (natural or otherwise) who asserts that its "religious exercise has been [substantially] burdened" (42 U.S.C. § 2000bb-1(c)), a court cannot adjudicate a RFRA claim in the manner that the Act requires.

7

2. Congress incorporated into RFRA the fundamental understanding that undergirds the very concept of freedom of conscience: Religious belief and exercise are particularized matters that require religious claimants to assert and explain their own religious interests and identify what sorts of accommodations from the law they seek. Congress thus drafted RFRA as a vehicle to seek redress for burdens on one's own religious exercise, not a roving license for nonreligious parties to litigate what they believe to be the religious interests of others.

That intent is reflected in RFRA's purpose provision. *See* 42 U.S.C. § 2000bb(b)(1). Congress explained that it disapproved of the Supreme Court's altering of free-exercise jurisprudence in *Employment Division v. Smith*, 494 U.S. 872 (1990) (*see id.* at § 2000bb(a)(4)), and sought to "restore the [earlier] compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)" (*id.* at § 2000bb(b)(1)). When that pre-*Smith* test was the constitutional standard, the Supreme Court never considered a free-exercise claim by a nonreligious entity. Instead, the Court consistently treated religious free-exercise rights as specific to the religious claimant. *See, e.g.*, *Permoli v. Mun. No. 1*, 44 U.S. 589, 599 (1845) ("Faith, doctrine, are . . . objects of the understanding and the heart."); *Murdock v. Pennsylvania*, 319 U.S. 105, 109–110 (1943); *Sherbert*, 374 U.S. at 402; *Yoder*, 406 U.S. at 209; *United States v. Lee*, 455

U.S. 252, 257 (1982); *Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 834 (1989).

RFRA did not alter the essential nature of religious exercise. Nor did it abandon the long-standing commitment to individualized judicial inquiry about adherents' beliefs and practices and about the real burdens that challenged governmental action places on them. Rather, RFRA mandates a "focused inquiry" that concentrates on "the particular claimant." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–432 (2006).

3. The upshot is that courts must adjudicate claims that sound in free exercise by considering whether the claimant's asserted religious belief and exercise are "sincere" (*United States v. Seeger*, 380 U.S. 163, 165 (1965); *Hernandez v. Comm'r*, 490 U.S. 680, 693 (1989)), and whether the claimant can "show that his good-faith religious beliefs are hampered" (*Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2100 (2019) (Gorsuch, J., concurring) (quoting *Braunfeld v. Brown*, 366 U.S. 599, 615 (1961) (Brennan, J., concurring in part and dissenting in part)).

In *Burwell v. Hobby Lobby Stores, Inc.*, the Supreme Court underscored that these requirements apply under RFRA just as they did under the Free Exercise Clause before *Smith*: "To qualify for RFRA's protection," "an asserted belief must be 'sincere'"; when it is not, the

claimant's "pretextual assertion of a religious belief in order to obtain an exemption for financial reasons would fail." 573 U.S. 682, 717 n.28 (2014). This Court explained in *Spencer v. World Vision, Inc.*, 619 F.3d 1109, 1116 n.7 (9th Cir. 2010), that the sincerity "determination focuses on the credibility of the individual's testimony" about that claimant's own beliefs. And the Supreme Court has noted Congress's "confiden[ce] [in] the ability of the federal courts to weed out insincere [RFRA] claims." *Hobby Lobby*, 573 U.S. at 718.

Here, however, there is no way to make that individualized credibility determination, for no party to this litigation asserts its own religious claim. To be sure, a self-insured religious employer might have a sincere religious objection to paying for employees' or their dependents' gender-affirming care. And perhaps those might add up to a colorable RFRA claim if that employer were subject to Section 1557, had standing to challenge the law's application to it, and actually brought the as-applied challenge. But that is not what happened here. Instead, Blue Cross offers only hypothetical religious concerns of mostly unspecified clients or potential clients. So conjectural are these purported religious objections that Blue Cross cannot state them concretely, making only vague assertions that "sometimes," "[s]ome self-insuring employers . . . have chosen to exclude from coverage certain gender-affirming medical services" (Br. 1), without saying who the

employers are, or what health services they object to, or under what circumstances those objections might apply.

In the long litany of RFRA cases involving the Affordable Care Act's contraceptive-coverage requirement, the Supreme Court has required the real party in interest—the religious claimant—to define its religious objections with particularity. In *Hobby Lobby*, for example, the religious adherents objected to four of twenty FDA-approved contraceptives and requested an accommodation from the ACA's requirement that they provide insurance coverage for those four. 573 U.S. at 682, 701–704. In *Zubik v. Burwell*, by contrast, the religious adherents objected to contracting for an insurance plan that included *any* coverage for contraceptives, but they were indifferent to having "their employees receive cost-free contraceptive care from the same insurance company" outside the employers' plan. 578 U.S. 403, 407–408 (2016) (per curiam). And in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, the religious adherents objected to self-certification of their objections, which they viewed as making them complicit in the provision of contraceptives, but they didn't object to coverage through other mechanisms. 591 U.S. 657, 668–669 (2020). The details mattered for determining whether the parties had cognizable RFRA claims and what religious accommodations they sought.

Here, however, Blue Cross would have this Court guess about the contours of some hypothetical religious adherent's beliefs and burdens. As third-party administrator, Blue Cross serves a diverse, wide-ranging clientele, some of which may object to all sorts of coverage, while others object to none. Even if some employer-plan sponsors hold religious beliefs against gender-affirming care, the particular contours of their beliefs and what might substantially burden them would vary from adherent to adherent. That is why the courts cannot ignore RFRA's prerequisites of sincerity and a specific, substantial burden, which only the (here absent) religious claimant could show. *Cf. Spencer*, 619 F.3d at 1116 n.7.

4. If RFRA instead functioned as Blue Cross urges, the company would be entitled to unbounded exemptions to violate federal law whenever it merely suggests that some client's religious interests might be implicated. Blue Cross thus demands near-total immunity from liability under Section 1557 for discrimination based on sexual orientation, gender identity, pregnancy, and, for that matter, race or disability (because Section 1557 does not treat different types of discrimination differently, and Blue Cross's argument has no logical stopping point). If no religious adherent need be a party, there is no limit to what exemptions Blue Cross and every other secular third-party administrator might demand.

Having disclaimed religious exercise, Blue Cross cannot assert a cognizable legal injury or accommodation request under RFRA. *Cf. FDA v. All. for Hippocratic Med.*, 602 U.S. __, 2024 WL 2964140, at *6 (June 13, 2024) ("By requiring the plaintiff show injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action."). And even if it could, it still could not assert claims on behalf of employer-clients, which may not be subject to Section 1557 or have any injury under RFRA. *See id.* at *15 (Thomas, J., concurring) (explaining exacting requirements for third-party standing); *see also Am. Legion*, 139 S. Ct. at 2100 (Gorsuch, J., concurring) (collecting cases showing that in free-exercise contexts "standing doctrine has . . . bite").

Moreover, if Blue Cross were correct that RFRA provides defenses to secular third-party administrators, the Act would also confer standing on those businesses to bring RFRA actions as offensive claims, for the Act does not treat claims and defenses differently. *See* 42 U.S.C. §§ 2000bb-1(c). Suppose that a nonreligious insurance company sought to offer insurance plans that categorically exclude coverage for gender-affirming care (or pregnancy-related care, or care for sickle-cell or Tay-Sachs disease, or care for persons with disabilities), whether out of bias or because as a business matter the company thought it might benefit from offering cheaper plans

13

that cover less. Blue Cross's legal theory would permit that company to file a RFRA action against the government, assert purely hypothetical religious beliefs of hoped-for future clients, and obtain a religious exemption from the ACA's bar on discriminatory health plans to market those stingy policies. Surely that was not Congress's intent.

In sum, Blue Cross's coopting of hypothetical religious objections by employer-customers does not just defy RFRA's text. It also demands that the courts grant religious exemptions from the law to *nonreligious* parties, based on judicial hunches about what some religious *nonparty* might find objectionable or acceptable. Adjudication of RFRA claims does not, and as a jurisprudential matter cannot, proceed that way.

5. Blue Cross's legal theory is also flawed in another critical respect: Even if RFRA did somehow authorize the company to assert religious claims of nonparties, Blue Cross assumes (Br. 57), without explanation, that it could not comply with Section 1557's nondiscrimination requirements without also violating client-employers' religious freedom. But as already noted, Section 1557 applies to Blue Cross as an insurer and third-party administrator. Whatever religious employers Blue Cross purports to speak for apparently do not object to Blue Cross's coverage of gender-affirming care under *other* plans that the company offers or administers. If they did, they presumably would not have contracted with Blue Cross to serve as

14

third-party administrator in the first place. Hence, Blue Cross can comply with its independent nondiscrimination obligations under Section 1557 *and* satisfy religious employers by the simple expedient of itself paying for the coverage. Blue Cross may disfavor that option as a business matter, but it would place no burden on religion and would fully resolve the company's asserted objections.

### C. RFRA's Compelling-Interest Test Requires That Both The Government And The Religious Claimant Be Parties.

The problems here only get worse at step two of the RFRA inquiry, for *both* parties in interest—the government *and* the religious adherent—are absent.

1. It is binding Circuit precedent that RFRA categorically does not apply when the government is not a party to the action. *See Sutton*, 192 F.3d at 834, 837–844. The Sixth and Seventh Circuits agree. *See Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 411–412 (6th Cir. 2010); *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 736–737 (7th Cir. 2015). The Third and Fifth Circuits appear to agree also. *See In re Grand Jury Empaneling*, 171 F.3d 826, 835 (3d Cir. 1999) (in civil-contempt proceeding against witnesses asserting RFRA rights not to testify before grand jury, government must satisfy compelling-interest test); *Boggan v. Miss. Conf. of United Methodist Church*, 222 F. App'x 352, 353 (5th Cir.

15

2007) (per curiam) (affirming "for essentially the reasons . . . expressed by the district court," which held that RFRA does not apply in suits between private parties); *Whole Woman's Health v. Smith*, 896 F.3d 362, 371 (5th Cir. 2018) (adopting and applying *Grand Jury Empaneling*). And the Fourth Circuit recently declined even to consider the question that Blue Cross poses here, because "what exactly it would mean to expand RFRA's scope so dramatically is largely untested and difficult to anticipate." *Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316, 329 (4th Cir. 2024).

The only circuit ever to rule otherwise—the Second, in *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006)—did so over a vigorous dissent from then-Judge Sotomayor (*see id.* at 114–115 (Sotomayor, J., dissenting)). Soon after, that court (per Judge Walker) recognized that *Hankins* was wrong. *See Rweyemamu v. Cote*, 520 F.3d 198, 201–204 & n.2 (2d Cir. 2008).[2]

In other words, Blue Cross asks a panel of this Court to ignore long-settled, binding circuit precedent and to adopt, against the overwhelming weight of authority, a view held only by a divided panel of another circuit

---

[2] Accordingly, lower courts in the Second Circuit have since followed *Rweyemamu* and Justice Sotomayor's *Hankins* dissent. *See, e.g.*, *Wisc. Province of Soc'y of Jesus v. Cassem*, 373 F. Supp. 3d 378, 390–391 (D. Conn. 2019); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. L.L.C.*, 531 B.R. 439, 483–484 & n.29 (Bankr. S.D.N.Y. 2015).

nearly two decades ago—a view that that same court almost immediately repudiated.

2. The cases that Blue Cross and its *amici* insist apply RFRA in "private-party lawsuit[s]" (CBA Br. 22) do no such thing.

In *EEOC v. Catholic University of America*, 83 F.3d 455, 468–470 (D.C. Cir. 1996), "the EEOC joined [the plaintiff] in" bringing the action (*id.* at 459), so the government was a party. *Catholic* "did not analyze the question, let alone state whether RFRA would apply if the private plaintiff had sued alone." *Hammons v. Univ. of Md. Med. Sys. Corp.*, 649 F. Supp. 3d 104, 125 (D. Md. 2023).

*In re Young*, 141 F.3d 854, 857–861 (8th Cir. 1998), involved a RFRA claim against a Chapter 7 bankruptcy trustee. Trustees are "court officer[s]" (WILLIAM J. NORTON III, NORTON BANKR. L. & P. 3d § 28:1 (2024)) who work "in effect for the court that appointed or approved [them]" (*In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998)). So the entity against whom RFRA was invoked was the judiciary—i.e., the government.

Relatedly, in *Whole Woman's Health*—a suit against Texas—the plaintiffs served a third-party subpoena on a religious nonparty witness for the state. 896 F.3d at 364–367. The Fifth Circuit weighed the nonparty's religious objection against the *district court*'s interests in conducting the trial; and the relief that the nonparty sought was against the court. *See id.*

17

at 371 (observing that substantial "burden here is from compelling [the nonparty] to reveal wholly internal communications" to the court "and subjecting [it] to a threat of sanctions, ranging from monetary to striking the witness to contempt, if it fails to comply.").

Beyond those cases, Blue Cross contends (Br. 64) that *Worldwide Church of God v. Philadelphia Church of God*, 227 F.3d 1110 (9th Cir. 2000), "assumed without deciding" that RFRA may be raised as a defense in purely private actions, and that *Sutton* forecloses only affirmative RFRA claims. But in *Sutton* this Court "note[d] that RFRA does not expressly include private" parties "within its reach," and that "[w]hen Congress has intended to regulate private" parties, "it has done so explicitly." 192 F.3d at 834. Nothing about that analysis—or the Act's text—treats claims and defenses differently. Plus, this Court concluded in *Worldwide* that a view of RFRA like the one that Blue Cross urges here was "unlikely." 227 F.3d at 1121.

3. More than that, "[t]he text of the statute makes quite clear that Congress intended RFRA to apply only to suits in which the government is a party." *McGill*, 617 F.3d at 410.

First, RFRA explicitly states: "Government shall not substantially burden a person's exercise of religion. . . ." 42 U.S.C § 2000bb-1(a). The Act thus requires the government to justify any demonstrated substantial burden on a claimant's religious exercise by showing that its action "(1) is

in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). "In other words, [RFRA] is a burden shifting test in which the government must make a showing after the [religious claimant] demonstrates a substantial burden." *Listecki*, 780 F.3d at 736. The whole point is to require the government, when it interferes with religious exercise, to justify its actions in court. So even if Blue Cross could somehow show a substantial burden on religious exercise that it has expressly disclaimed, RFRA still could not be applied, because the government is absent.

Relatedly, RFRA's "Judicial Relief" provision authorizes "appropriate relief *against a government*." 42 U.S.C. § 2000bb-1(c) (emphasis added). Because "[t]he relief is clearly and unequivocally limited to that from the 'government,'" "[i]f the government is not a party, no one can provide the appropriate relief." *Listecki*, 780 F.3d at 737. That follows because the relief that RFRA contemplates is "an exemption from the rule" of law that substantially burdens the religious claimant's religious exercise. *Hobby*

19

*Lobby*, 573 U.S. at 695. No private party could exempt Blue Cross from the law.[3]

RFRA's "findings and purposes sections" also "repeatedly refer[ ] to government action." *McGill*, 617 F.3d at 411 ("Congress found that '*governments* should not substantially burden religious exercise without compelling justification,' that the pre-*Smith* regime had required that 'the *government* justify burdens on religious exercise,' and that strict scrutiny was necessary for 'striking sensible balances between religious liberty and competing prior *governmental* interests.'" (quoting 42 U.S.C. § 2000bb(a) (emphasis in original)). Blue Cross's view would unmoor RFRA from those legislative findings and impose an entirely different legal regime to regulate an entirely different set of issues and relationships.

RFRA defines, moreover, how the government may "demonstrate" that it satisfies the compelling-interest test: by "going forward with the evidence." 42 U.S.C. § 2000bb-2(3). When, "as here, the government is not a

---

[3] *Amicus* Catholic Benefits Association incorrectly contends (at 17–18) that the drafting history shows congressional intent not to limit the scope of relief. CBA is correct that the House's first drafts would have allowed RFRA claimants to "obtain appropriate relief (*including* relief against a governmental authority)" (H.R. 5377 101st Cong. § 2(c) (1990) (emphasis added)), which might, perhaps, have been read to leave open the possibility of remedies of some sort against private parties. But Congress struck that language and instead provided for relief solely "against a government." 42 U.S.C. § 2000bb-1(c). That intentional change only underscores why this Court's binding *Sutton* precedent is correct.

party, it cannot 'go[ ] forward' with any evidence." *Hankins*, 441 F.3d at 114 (Sotomayor, J., dissenting); *accord Listecki*, 780 F.3d at 736; *Rweyemamu*, 520 F.3d at 203 n.2.

Finally, Congress knows how to delegate to private parties the government's authority to litigate. *See, e.g.*, 31 U.S.C. § 3730(b) (authorizing private parties to bring *qui tam* actions to enforce federal False Claims Act). Yet it chose in RFRA to define "government"—the entity that must establish its compelling interests that are then to be balanced against the claimant's religious interests—to be "a branch, department, agency, instrumentality, and official (or other person acting under the color of law) of the United States . . . ." 42 U.S.C. § 2000bb-2(1).

4. "The legislative history" likewise shows that "Congress did not mean for RFRA to be applicable when the government is absent" and cannot defend its compelling interests. *Listecki*, 780 F.3d at 737. In fact, "all of the examples cited in the Senate and House Reports on RFRA involve actual or hypothetical lawsuits in which the government is a party." *Hankins*, 441 F.3d at 115 n.9 (Sotomayor, J., dissenting). This Court need not and should "not read into the statute what neither the plain language nor legislative history has included." *Listecki*, 780 F.3d at 737.

5. Blue Cross's distortion of RFRA's compelling-interest test is doubly unworkable in that it would allow—as here—not just the government but

also the religious adherent to be absent. After the government demonstrates a compelling interest (which it has not been given the opportunity to do here), the reviewing court must then decide whether the challenged action is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(2). This "focused inquiry" requires "the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *O Centro*, 546 U.S. at 432, 430–431; *see also Hobby Lobby*, 573 U.S. at 726–727 (courts must "scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants . . . ."). A court could not make that determination for an absent rights-holder.

The least-restrictive-means test requires that both the government and the religious adherent be present, because it respects both sides' interests: If granting an accommodation would undermine the government's compelling interests, then denying the exemption is the least restrictive means of accomplishing the government's objectives. *See, e.g.*, *Lee*, 455 U.S. at 260; *Sherbert*, 374 U.S. at 407. If accommodations would "impose unjustified burdens on" third parties, the governmental action likewise withstands judicial scrutiny. *Cutter v. Wilkinson*, 544 U.S. 709, 726 (2005).

22

And regulatory alternatives that would not change the burdens on the claimant's religious exercise are beside the point.

In sum, if the government cannot explain its regulatory regime and the legislative aims that it serves, the courts cannot consider how possible alternatives might affect achievement of the regulatory objectives. And without the religious adherent's presence, the least-restrictive-means analysis would be untethered from the rights-holder's actual religious needs. Courts would have to decide whether some potential alternative governmental action would be more, less, or equally burdensome as a religious matter, and more, less, or equally objectionable to the religious rights-bearer, without being able even to ask the rights-bearer those questions. When neither real party in interest is in the suit, courts simply cannot conduct the statutorily mandated inquiry.

### D. RFRA's Religious-Accommodation Framework Does Not Rewrite All Federal Law Wholesale.

1. Blue Cross misreads (Br. 61–65) a comment in *Bostock v. Clayton County*, 590 U.S. 644, 682 (2020), about RFRA "as a kind of super statute" to mean, contrary to the Act's plain text, binding precedent, legislative history, and common sense, that RFRA rewrites the U.S. Code and Code of Federal Regulations from the ground up. In their view, it is a canon of

statutory construction that redrafts every federal law to read "except if someone, somewhere might conceivably have a religious objection."

That is not what it means to label something a super-statute. The three defining features of a so-called super-statute are that it supplants an existing legal approach with a new principle, the new principle "'sticks' in the public culture," and the statute is "generated in a reflective and deliberative manner over a long period of time." *See* William N. Eskridge Jr. & John Ferejohn, *Super-Statutes*, 50 Duke L.J. 1215, 1230–1246 (2001) (defining "super-statute" and identifying Sherman Act, Civil Rights Act of 1964, and Endangered Species Act as examples). RFRA might be called a super-statute because the Act fundamentally changed the *Smith* approach for all free-exercise claims against the federal government. Because no action by the federal government "is exempt from the RFRA standard of review," the Act authorizes religious-accommodation claims and requires application of the compelling-interest test whenever a claimant has demonstrated that the federal government substantially burdens that claimant's religious exercise. Eugene Gressman & Angela C. Carmella, *The RFRA Revision of the Free Exercise Clause*, 57 Ohio St. L.J. 65, 111 (1996); *see also* Michael Stokes Paulsen, *A RFRA Runs Through It: Religious Freedom and the U.S. Code*, 56 Mont. L. Rev. 249, 256 (1995).

The *Bostock* Court explained that the label could be said to apply to RFRA because the Act "might supersede" other federal laws "in appropriate cases." 590 U.S. at 682. But the Court also emphasized that "while other employers in other cases may raise free exercise arguments that merit careful consideration, none of the [parties] before [it]" argued "that compliance with Title VII will infringe their own religious liberties in any way." *Id.* Because no RFRA issue was properly before it, the Court expressly reserved "for future cases" all questions about how RFRA "interact[s] with Title VII"—or any other statute. *Id.* If RFRA instead functioned as Blue Cross wishes, the Court would have had no choice but to consider it, because it would have amended the text of Title VII.

Again, claims about burdens on religious exercise from a religiously neutral, generally applicable law are claims for religious accommodations— that is to say, exemptions from the general legal requirement that would ameliorate the special burdens on the claimant's religious exercise. *See, e.g.*, *Lee*, 455 U.S. at 259 (free-exercise analysis is about "attempting to accommodate religious beliefs"). Successful RFRA claims do not invalidate or fundamentally alter the operation of federal law for those who have not established their right to an accommodation. Otherwise, the statutory regime of as-applied requests for religious accommodations would be converted into a right to bring facial challenges to any general law that

25

happens to have some incidental effect on religious interests—which all laws surely do. Free-exercise claims—be they constitutional or statutory—simply do not function that way.

2. If Blue Cross's mistaken view of RFRA were correct, secular businesses could assert possible religious objections of customers or clients to exempt themselves from any statutory obligations that they dislike or wish to avoid for entirely nonreligious reasons. A private, for-profit landlord who rents (or might wish to rent) a space in a strip mall to a church could exempt itself from the Rehabilitation Act, 29 U.S.C. §§ 701–797b, and leave the mall inaccessible to people with disabilities. A restaurant might opt out of complying with Title II and Title VII because it caters Easter brunch for a church. A souvenir shop might pay poachers for eagle feathers to sell as curios, because sometime in the future a member of the Native American Church could conceivably patronize the shop. *But see* 16 U.S.C. § 668–668d; 50 C.F.R. § 22. And if free-exercise rights as a class operated as Blue Cross contends, a secular business could also go beyond RFRA to avail itself of the constitutional ministerial exception and discriminate in hiring because some hypothetical religious client might someday prefer that. *Cf. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 192 (2012).

At bottom, Blue Cross asks this Court to create for secular businesses free-exercise penumbras, which would be limited only by the imagination of creative lawyers and accountants. RFRA does not operate that way—for good reason.

3. What is more, if RFRA rewrote every subsection and provision of the U.S. Code and Code of Federal Regulations to create religious exemptions even for secular businesses, as Blue Cross and its *amici* contend, this Court in *Sutton* would have been required to read into the Internal Revenue Code a raft of religious exemptions for anyone who might possibly do business with a religious entity. And on Blue Cross's view (Br. 62), this Court's failure to do so was not just a mistake, but constitutional error of the highest order. As explained, however, RFRA instead authorizes religious entities and individual adherents to seek and potentially obtain accommodations to address their particular religious needs. Facially neutral laws of general applicability are not rendered optional, as Blue Cross apparently wishes.

27

## CONCLUSION

RFRA requires two parties—a sincere religious claimant and the federal government. Neither is present here. As a matter of plain text, legislative history, precedent, and logic, Blue Cross's RFRA arguments are simply and decidedly wrong. There can be no colorable RFRA claim or defense in this action.

Respectfully submitted,

 /s/ *Richard B. Katskee*

RICHARD B. KATSKEE
JOSHUA BRITT[†]
MARGARET K. KRUZNER[†]
JAKE SHERMAN[†]
   *Duke University*
    *School of Law*
   *210 Science Dr., Box 90360*
   *Durham, NC 27708-0360*
   *(919) 613-7230*

*Counsel for* Amici Curiae

Date: June 19, 2024

---

[†] May 2024 graduate of Duke Law School, appearing under Cir. R. 46-4.

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-4331

I am the attorney or self-represented party.

**This brief contains** | 5,905 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [ ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Richard B. Katskee | **Date** | June 19, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**        *Rev. 12/01/22*