No. 23-4331

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

C. P., by and through his parents, Patricia Pritchard and
Nolle Pritchard; and PATRICIA PRITCHARD, *et al.*,

*Plaintiff-Appellee,*

v.

BLUE CROSS BLUE SHIELD OF ILLINOIS,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Washington
No. 3:20-cv-06145-RJB
Hon. Robert J. Bryan

**APPELLANT'S SUPPLEMENTAL BRIEF
RE: *SKRMETTI V. UNITED STATES***

Kwaku A. Akowuah
Jeremy D. Rozansky
SIDLEY AUSTIN LLP
1501 K St. NW
Washington, DC 20005
(202) 736-8000
kakowuah@sidley.com

Sam Gorsche
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

Gwendolyn C. Payton
John R. Neeleman
KILPATRICK TOWNSEND &
 STOCKTON LLP
1420 Fifth Ave., Suite 3700
Seattle, WA 98101
(206) 626-7714
gpayton@ktslaw.com
jneeleman@ktslaw.com

*Attorneys for Appellant Blue Cross Blue Shield of Illinois*
[Additional Counsel Listed on Inside Cover]

Adam H. Charnes
KILPATRICK TOWNSEND &
 STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
(214) 922-7106
acharnes@ktslaw.com

Stephanie Bedard
KILPATRICK TOWNSEND &
 STOCKTON LLP
1100 Peachtree Street NE
Suite 2800
Atlanta, GA 30309
(404) 815-6039
sbedard@ktslaw.com

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bostock v. Clayton Cnty.*,
 590 U.S. 644 (2020) ................................................................................ 2

*Doe v. Snyder*,
 28 F.4th 103 (9th Cir. 2022) .................................................................... 2

*Geduldig v. Aiello*,
 417 U.S. 484 (1974) ................................................................................ 4

*Kadel v. Folwell*,
 100 F.4th 122 (4th Cir. 2024) .................................................................. 5

*Roe v. Critchfield*,
 131 F.4th 975 (9th Cir. 2025) .................................................................. 3

*Folwell v. Kadel*,
 No. 24-99, 2025 WL 1787687 (U.S. June 30, 2025) .............................. 5

*United States v. Skrmetti*,
 145 S. Ct. 1816 (June 18, 2025) ........................................... 1, 2, 3, 4, 5

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ................................................................................ 5

If the Court concludes it must decide whether the coverage exclusions at issue discriminate based on sex, then the Supreme Court's decision in *United States v. Skrmetti* is dispositive. Rejecting the reasoning advocated by Plaintiffs and embraced by the district court, *Skrmetti* confirms that a classification based on a medical diagnosis of gender dysphoria is not sex-based discrimination, and thus does not violate the Constitution or (directly relevant here) federal laws, such as Section 1557, that prohibit discrimination on the basis of sex.

*Skrmetti* upheld a Tennessee law, SB1, which prohibits certain medical treatments, but only when provided "for the purpose of (1) 'enabling a minor to identify with, or live as, a purported identity inconsistent with the minor's sex,' or (2) 'treating purported discomfort or distress from a discordance between the minor's sex and asserted identity.'" *United States v. Skrmetti*, 145 S. Ct. 1816, 1826 (2025) (cleaned up). The challengers to SB1 contended this "creates facial sex-based classifications by defining the prohibited medical care based on the patient's sex." *Id.* at 1829. They argued both that "SB1 classifies on the basis of sex because its prohibitions reference sex" and that "SB1 works a sex-based classification because application of the law turns on sex." *Id.*

The Supreme Court disagreed. It held SB1 "clearly does not classify on the basis of sex." *Id.* at 1830. "Rather, SB1 prohibits healthcare providers from administering puberty blockers and hormones to minors for certain medical uses,

1

regardless of a minor's sex." *Id.* at 1829 (emphasis omitted). It added: "Under SB1, a healthcare provider may administer puberty blockers or hormones to any minor to treat a congenital defect, precocious puberty, disease, or physical injury; a healthcare provider may not administer puberty blockers or hormones to any minor to treat gender dysphoria, gender identity disorder, or gender incongruence. *The application of that prohibition does not turn on sex.*" *Id.* at 1830–31 (emphasis added).

The Court further explained that this same reasoning holds true for civil rights statutes like Section 1557 that prohibit adverse decisions of which "sex is the but-for cause." *Id.* at 1835; *see Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022). The Court rejected the challengers' analogy to *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020), not because that is a statutory case and *Skrmetti* is a constitutional case, but for a reason common to both frameworks: "sex is simply not a but-for cause of SB1's operation." 145 S. Ct. at 1835. Unlike the employment discrimination in *Bostock*, when it comes to limits on treatments for gender dysphoria, "neither [the patient's] sex nor his transgender status is the but-for cause of his inability to obtain" the treatment. *Id.* at 1834. Rather, "diagnosis" is. *Id.* at 1835.

*Skrmetti* controls here because this case equally turns on medical diagnosis and medical use, not sex. Plaintiffs challenge BCBSIL's conduct in applying, as a third-party administrator of employer-sponsored health plans, coverage exclusions for gender-affirming care that are chosen by employers. The district court found, and

2

Plaintiffs do not dispute, that "[i]n [BCBSIL's] administration of the Plan[s], the trigger for application of the Exclusion and a denial of coverage was a diagnosis of 'gender dysphoria' for C.P. and other class members." 1-ER-67; *see also* Red Br. 23–24; 7-ER-1533–35, 1538–40 (testimony describing pivotal role of diagnostic codes). As Plaintiffs put it in their class-certification brief below, BCBSIL "reviews claims to determine if the service is related to 'gender dysphoria' based on the diagnostic and procedural codes used; if so, the claim is denied under the Exclusions." 1-BCBSIL_SER-35; *see also* 1-ER-25 (defining the class with reference to the diagnostic code).

*Skrmetti* confirms that BCBSIL does not "discriminate 'on the basis of sex'" when it administers these gender-affirming-care exclusions in this way.[1] Indeed, *Skrmetti* forecloses each of Plaintiffs' core arguments on Section 1557.

*First*, *Skrmetti* rejected the notion that a "mere reference to sex," whether in the law or in the plan exclusion, means that the prohibition is "sex-based." 145 S. Ct. at 1829. Both Plaintiffs and the district court rely on the proposition that "[g]ender dysphoria cannot be understood without referencing sex or a synonym." 1-ER-67 (citation omitted); *see* Red Br. 22–23 (seizing on plan exclusions' use of

---

[1] At the very least, BCBSIL could not have had "adequate notice, when [it] accepted federal funding," that benefits determinations based on a gender-dysphoria diagnosis would be discrimination on the basis of sex. *Roe v. Critchfield*, 131 F.4th 975, 992 (9th Cir. 2025). The Court could reverse on this basis alone.

3

terms like "transgender" or "gender" and emphasizing that gender dysphoria diagnosis requires "considering a person's sex assigned at birth"). *Skrmetti* rejected that argument, explaining that kind of reductive approach is "especially inappropriate in the medical context," where "[s]ome medical treatments and procedures are uniquely bound up in sex." 145 S. Ct. at 1829.

*Second*, *Skrmetti* rejected Plaintiffs' argument that "discrimination based on gender dysphoria is a proxy for discrimination based on transgender status." Red Br. 24. It held that a proxy-discrimination claim could not be sustained because "there is a 'lack of identity' between transgender status and the excluded medical diagnoses." *Skrmetti*, 145 S. Ct. at 1833. The exclusion of hormone treatments for gender dysphoria does not discriminate against transgender people because "both transgender and nontransgender individuals" are able to seek hormone treatments for other conditions. *Id*. And while Plaintiffs derided BCBSIL's reliance on *Geduldig v. Aiello*, 417 U.S. 484 (1974), Red Br. 26, *Skrmetti* confirmed its relevance, explaining that like the pregnancy coverage exclusion in *Geduldig*, "SB1 does not exclude any individual from medical treatments on the basis of transgender status but rather removes one set of diagnoses—gender dysphoria, gender identity disorder, and gender incongruence—from the range of treatable conditions." *Skrmetti*, 145 S. Ct. at 1833. Under *Geduldig* and *Skrmetti*, a plaintiff would have to show that such a classification is "mere pretex[t] for invidious sex discrimination."

4

*Id.* The *Skrmetti* challengers did not attempt to make such a showing, *id.*, and neither have Plaintiffs. No such claim would be factually plausible here. Moreover, no such fact-intensive claim could feasibly be addressed class-wide, across 398 different employer plans. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 (2011).

*Third*, Plaintiffs urged this Court to ignore the Sixth Circuit's "reasoning" and to instead "look to the Fourth Circuit's decision" in *Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024). Red Br. 22 n.2; *see also* Red Br. 21, 23, 24, 25, 26, 27 (quoting *Kadel*). BCBSIL, in contrast, placed reliance on the Sixth Circuit's *Skrmetti* opinion. Blue Br. 66, 68–69. The Sixth Circuit has now been affirmed and *Kadel* vacated in light of *Skrmetti*. *Folwell v. Kadel*, 2025 WL 1787687, at *1 (U.S. June 30, 2025).

*Fourth*, *Skrmetti* confirms that the district court erred in reading *Bostock* to render unlawful BCBSIL's activities in administering employer-selected coverage exclusions of gender-affirming care. *See* 145 S. Ct. at 1834–35; *contra* 1-ER-67. As in *Skrmetti*, BCBSIL's challenged coverage determinations turn on medical diagnosis, and specifically "a diagnosis of 'gender dysphoria.'" 1-ER-67. And under *Skrmetti*, "[t]he application of that prohibition does not turn on sex" or "transgender status." 145 S. Ct. at 1831, 1833–34.

For these reasons, as well as those articulated in BCBSIL's prior briefing and argument, the judgment of the district court should be reversed with instructions to enter summary judgment for BCBSIL.

5

Date: July 9, 2025

/s/ *Kwaku A. Akowuah*
Kwaku A. Akowuah

Kwaku A. Akowuah
Jeremy D. Rozansky
SIDLEY AUSTIN LLP
1501 K St. NW
Washington, DC 20005
(202) 736-8000
kakowuah@sidley.com
jrozansky@sidley.com

Sam Gorsche
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

Gwendolyn C. Payton
John R. Neeleman
KILPATRICK TOWNSEND &
 STOCKTON LLP
1420 Fifth Ave., Suite 3700
Seattle, WA 98101
(206) 626-7714
gpayton@ktslaw.com

Adam H. Charnes
KILPATRICK TOWNSEND &
 STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
(214) 922-7106
acharnes@ktslaw.com

Stephanie Bedard
KILPATRICK TOWNSEND &
 STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
(404) 815-6039
sbedard@ktslaw.com

*Attorneys for Appellant Blue Cross Blue Shield of Illinois*

## CERTIFICATE OF COMPLIANCE

I certify that:

This brief complies with the type-volume limitation of this Court's June 18 Order for Supplemental Briefing because it contains five pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements this Court's June 18 Order for Supplemental Briefing and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 365 word processing system in 14-point, double-spaced Times New Roman font.

Date: July 9, 2025

> */s/ Kwaku A. Akowuah*
> Kwaku A. Akowuah
>
> *Attorney for Appellant Blue Cross Blue Shield of Illinois*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Date: July 9, 2025

*/s/Kwaku A. Akowuah*
Kwaku A. Akowuah

*Attorney for Appellant Blue Cross Blue Shield of Illinois*
