**No. 23-4331**

# In the United States Court of Appeals for the Ninth Circuit

C.P., by and through his parents, PATRICIA PRITCHARD and NOLLE PRITCHARD; S.L., by and through her parents, S.R. and R.L.; EMMETT JONES, each individually and on behalf of similarly situated others; and PATRICIA PRITCHARD, individually,

*Plaintiffs-Appellees*,

v.

BLUE CROSS BLUE SHIELD OF ILLINOIS,

*Defendant-Appellant*.

On Appeal from the United States District Court for the Western District of Washington, No. 3:20-cv-06145-RJB, Hon. Robert J. Bryan

**PLAINTIFFS-APPELLEES' SUPPLEMENTAL BRIEF**

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Fl.
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Karen L. Loewy
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
815 16th Street NW, Suite 4140
Washington, DC 20006
(202) 804-6245
kloewy@lambdalegal.org

Eleanor Hamburger
SIRIANNI YOUTZ SPOONEMORE
HAMBURGER PLLC
3101 Western Avenue, Suite 350
Seattle, WA 98121
(206) 223-0303
ehamburger@sylaw.com

Jennifer C. Pizer
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 S. Figueroa Street, Suite 1260
Los Angeles, CA 90017
(213) 382-7600
jpizer@lambdalegal.org

*Counsel for Plaintiffs-Appellees and the Class*

*United States v. Skrmetti*, 145 S. Ct. 1816 (2025), does not control—and does not undercut—this case. **First,** *Skrmetti* addressed a law that the Supreme Court considered to be facially neutral. Here, by contrast, the Exclusions and BCBSIL's denials are facially discriminatory. They explicitly reference "***transgender*** services" and "***gender reassignment***" services—unambiguously targeting transgender people and no one else. This is discrimination by definition, not implication.

**Second,** context matters. *Skrmetti* involved a constitutional equal protection claim. This is a statutory civil rights case. Foundational to *Skrmetti*'s reasoning was the legal fiction of *Geduldig v. Aiello*, 417 U.S. 484 (1974), that a medical condition (pregnancy) cannot be a proxy for sex (women) under equal protection. Congress expressly rejected this fiction in the statutory context. Neither *Skrmetti*'s reasoning, nor the Fourteenth Amendment's limitations, apply here.

**Finally**, the Constitution sets a floor, not a ceiling, for rights. *Cf. Mayweathers v. Newland*, 314 F.3d 1062, 1070 (9th Cir. 2002). Importing *Skrmetti*'s reasoning to the statutory context would undermine the ACA's purpose and protections, which as this Court has recognized prohibits discrimination that occurs when an insurer designs a health plan to exclude certain diagnoses, medical procedures, or devices required by or associated with a protected class. *See, e.g., Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 949, 958 (9th Cir. 2020). *Skrmetti* cannot be stretched to rewrite a statute explicitly enacted to prohibit discriminatory benefit design. *Id.* at 958.

## I. BCBSIL's Exclusions facially discriminate based on transgender status.

The Exclusions target transgender enrollees on their face and thus violate Section 1557 as a matter of law. *Skrmetti* reaffirmed that "discrimination based on … transgender status necessarily entails discrimination based on sex." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020); *Skrmetti*, 145 S. Ct. at 1834.

***First***, the Exclusions at issue expressly reference and are premised on the services being for transgender people. C.P. and Jones's plan refers to "***transgender*** reassignment." 6-ER-1229; 2-SER-147. And C.P. and S.L. received denials of "***transgender*** services." 1-ER-29; 2-ER258, 264. These are not proxies or general categories, they are direct references to transgender status. *See Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019). Under *Skrmetti*, the Exclusions are discriminatory.[1]

***Second,*** the Exclusions' categorical nature underscore their discriminatory intent: they ban coverage for all services "for, or leading to, ***gender reassignment*** surgery." 1-ER-29–30; 2 ER-236–40; 6-ER-1229; 2-SER-147. They turn not on a particular medical condition but rather whether the care leads to "gender reassignment" which, of course, equates with transgender status.[2] Thus, when a health insurer singles out "sex reassignment" for differential treatment, it treats transgender

---

[1] S.L.'s situation proves this point. S.L. is both transgender and diagnosed with precocious puberty. Despite her additional diagnosis, she was denied coverage for puberty-delaying medications solely because she is transgender. Resp. Br. 10–11.

[2] In this context, we do not "distinguish between status and conduct." Resp. Br. 25–26.

people differently "as a class." *Williams v. Kincaid*, 45 F.4th 759, 772 (4th Cir. 2022); *see also Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 577 (6th Cir. 2018). This is textbook facial discrimination.

Indeed, discrimination based on gender transition is necessarily based on sex, just as discrimination based on religious conversion is necessarily based on religion. *See* Resp. Br. 23; *see also Macy v. Holder*, 2012 WL 1435995, at *11 (E.E.O.C. Apr. 20, 2012). The Exclusions "intentionally penalize[ ]" transgender enrollees based on their sex assigned at birth, precisely what *Bostock* prohibits. 590 U.S. at 660.

BCBSIL has argued that the Exclusions are based on diagnosis, not identity. That argument fails. First, classifications can be simultaneously based on multiple grounds; that does not save them from liability when one of the bases is prohibited. *See*, *e.g.*, *Craig v. Boren*, 429 U.S. 190, 197 (1976). Second, discrimination based on gender dysphoria is discrimination based on transgender status. 1-ER-37–38; *see also Skrmetti*, 145 S. Ct. at 1833 ("only transgender individuals seek treatment for gender dysphoria"). And while *Skrmetti* did not accept this argument in the constitutional context by invoking *Geduldig,* its reasoning does not extend to the statutory context.

II.     **The reasoning of *Skrmetti* does not apply to the ACA.**

The Supreme Court in *Skrmetti* applied a deferential rational basis review to what it deemed a facially neutral law based on *Geduldig*. Under this framework, the Court concluded that Tennessee's law classified only based on age and medical use,

3

not sex or transgender status. It stressed the "wide latitude" states have in legislative classifications under rational basis. 145 S. Ct. at 1828. That holding is irrelevant here.

*Geduldig*'s reasoning (and therefore *Skrmetti*'s) does not apply in the statutory context. To the contrary, Congress passed legislation that reflects that classifications by medical use can be sex discrimination. Following the Supreme Court's decision in *General Elec. Co. v. Gilbert*, 429 U.S. 125 (1976), importing *Geduldig*'s reasoning into Title VII, Congress moved quickly to amend Title VII to "unambiguously" reject "the holding and the reasoning" of *Gilbert* and *Geduldig*. *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 678 (1983); *see* 42 U.S.C. §2000e(k). And since their first formulation, Title IX's regulations relating to sex discrimination have likewise expressly rejected *Geduldig* and *Gilbert*'s reasoning. *See* 45 Fed. Reg. 30,903, 35,959, 35,962-63 (May 9, 1980); *see also Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012). Congress intended to preserve the use of medical classifications as a proxy for sex discrimination in nondiscrimination statutes.

When Congress enacted Section 1557, it intended to protect enrollees from discrimination based on their health status and the medical services they use. *See*, *e.g.*, 42 U.S.C. §§ 300gg-3(b)(1), 300gg-4, 18022(4), 18116(a). The ACA thus abolished insurers' ability to discriminate based on health condition: "Prior to the ACA's enactment, an insurer could generally design plans to offer or exclude benefits as it saw fit without violating federal antidiscrimination law…" *Schmitt*, 965 F.3d at 948.

4

After the ACA, health insurers have "an ***affirmative obligation not to discriminate*** in the provision of health care" and must "not design plan benefits in ways that discriminate." *Id.* at 955. Section 1557 codifies a broad statutory commitment to eliminate both facial and functional discrimination in health coverage—exactly the sort of discrimination at issue here. *Skrmetti* does not undo this statutory command.

### III. The ACA protects against proxy discrimination, despite *Skrmetti*.

Section 1557 incorporates the grounds of Title IX, and with it, its prohibition on using "pregnancy or related conditions" as stand-ins for sex. The same logic applies here: denying coverage for gender dysphoria is impermissible proxy discrimination against transgender people. The ACA's regulations confirm this. 45 C.F.R. § 92.101(a)(1); *see also*, *e.g.*, 89 Fed. Reg. 37,522, 37,576, 37,671 (May 6, 2024). Like the hearing aid exclusion in *Schmitt*, the Exclusions are a form of discrimination by proxy. *See* 965 F.3d at 955. BCBSIL's post-litigation justifications are a pretext for "invidious discrimination." *Geduldig*, 417 U.S. at 496 n.20; *Skrmetti*, 145 S. Ct. at 1833. Not only are the Exclusions facially discriminatory, but BCBSIL enforced them despite its conclusion that the services can be medically necessary. 7-ER-1502–22, 1525, 1536–37; 8-ER-1720-21. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) (intentional discrimination may be adduced from the "totality of the relevant facts"). That the Exclusions exclusively impact transgender enrollees and no one else provides further proof of proxy and pretext. *Doe v. Horne*, 115 F.4th 1083, 1103 (9th Cir. 2024).

5

Dated this 9th day of July 2025.

                                                        Respectfully submitted,

                                                        */s/ Omar Gonzalez-Pagan*

| | |
|---|---|
| Eleanor Hamburger | Omar Gonzalez-Pagan |
| SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC | LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. |
| 3101 Western Avenue, Suite 350 | 120 Wall Street, 19th Fl. |
| Seattle, WA 98121 | New York, NY 10005 |
| (206) 223-0303 | (212) 809-8585 |
| ehamburger@sylaw.com | ogonzalez-pagan@lambdalegal.org |
| | |
| Jennifer C. Pizer | Karen L. Loewy |
| LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. | LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. |
| 800 S. Figueroa Street, Suite 1260 | 815 16th Street NW, Suite 4140 |
| Los Angeles, CA 90017 | Washington, DC 20006 |
| (213) 382-7600 | (202) 804-6245 |
| jpizer@lambdalegal.org | kloewy@lambdalegal.org |

*Counsel for Plaintiffs-Appellees and the Class*